# State of Vermont v. Timothy Baxter

[487 A.2d 163]

No. 83-472

Present: Hill, Underwood, Peck and Gibson, JJ., and Keyser, J. (Ret.),
Specially Assigned

Opinion Filed December 21, 1984

*Helen V. Torino,* Franklin County State's Attorney, St. Albans, for Plaintiff-Appellant.

*Nancy E. Kaufman,* Montpelier, for Defendant-Appellee.

Gibson, J. This case comes before us as an interlocutory appeal by the State from the trial court's order suppressing a pretrial voice identification as suggestive and unreliable. We affirm.

Viewing the evidence in the light most favorable to the prevailing party, *State* v. *Cline,* 139 Vt. 451, 453, 430 A.2d 455, 457 (1981), we find the record reveals the following facts. During the evening of November 5, 1982, a masked man entered the house of Mrs. Irene Arel in St. Albans and robbed her at gunpoint. Afterward, the elderly woman telephoned the police and described the robber as about 5'8", wearing a dark jacket with a fur hood. Half an hour later, defendant, fitting the description, was stopped in the neighborhood. After gathering other evidence linking defendant circumstantially with the crime, the police eventually applied for and obtained a nontestimonial identification order for the "purpose of *voice* identification." (Emphasis supplied.)

The defendant moved to quash the order as overbroad, based upon his concerns that the victim knew the police had a suspect, that the proposed procedure would permit visual contact, and that defendant would draw attention to himself simply because he had difficulty reading. The court refused to quash, but cautioned the State to "minimize the risk of suggestivity."

In a darkened room, the lineup participants held masks in

front of their faces while reciting typewritten phrases that had allegedly been uttered by the robber to Mrs. Arel. Although designed to be a "voice" identification, some of the descriptions of defendant given by Mrs. Arel following the lineup were based on characteristics other than voice. In addition, her identification was weak and tentative and was made only after much prodding by the former state's attorney.

The trial court granted defendant's motion to suppress, noting Mrs. Arel's incorrect description of clothing color and her vacillation between participants. The court concluded that her identification of defendant was "questionable" and "unreliable." It found that the State had encouraged her choice and that her identification "was a visual one not an auditory one." The court found credible the testimony of defendant's expert witness "that this aged witness was identifying characteristics unrelated to voice and responding to innocent but suggestive questions."

The State first challenges the court's finding that Mrs. Arel described clothing color incorrectly and identified two different people, as unsupported by the evidence. We disagree. Although, as the State argues, the court heard testimony that Mrs. Arel later clearly stated that she had been certain about defendant's voice immediately and had always intended to single out only defendant, the court also heard testimony about her indecision and vacillation at the time of the lineup. Unless clearly erroneous, the findings of the trial court must be affirmed if supported by credible evidence. *State* v. *Comes,* 144 Vt. 103, 107, 472 A.2d 1253, 1255 (1984). Credible evidence was presented that supports the court's findings.

The State next argues that the court did not apply the correct legal standard in granting defendant's motion to suppress. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson* v. *Brathwaite,* 432 U.S. 98, 106 (1977) (footnote omitted) (setting forth a "totality of the circumstances" test). See *United States* v. *Moore,* 571 F.2d 76, 91 (2d Cir. 1978) (applying standard to voice identification) ; see also *United States* v. *Williams,* 594 F.2d 1258, 1259 (9th Cir. 1979) (applying *Manson* standard to combined voice/visual

lineup); *Faison* v. *Zahradnick*, 563 F.2d 1135, 1137 (4th Cir. 1977) (same). Application of the standard involves a two-step process, first determining whether the procedure was unnecessarily suggestive and, if so found, then assessing the reliability of the identification—i.e., the likelihood of irreparable misidentification caused by the unnecessary suggestivity. See, e.g., *United States* v. *Atkins*, 698 F.2d 711, 713 (5th Cir. 1983); *Passman* v. *Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981), *cert. denied*, 455 U.S. 1022 (1982). Treating reliability as the "linchpin in determining the admissibility of identification testimony," *Manson, supra*, 432 U.S. at 114, recited the factors to be weighed:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

■ The State contends that the court did not apply the test properly, observing that the court's findings reflect no precise analysis at all. It argues that the court did not consider the "totality of the circumstances" or engage in a stepped process. The "totality of the circumstances" test does not require that the trial court accept all evidence as of equal weight, nor does it permit this Court to reweigh the evidence considered by the trial court. The findings and conclusions, although scant, do not indicate that the trial court either erroneously or arbitrarily refused to consider relevant evidence or misconstrued the "totality of the circumstances" test.

■ The State also argues that the court treated suggestivity as synonymous with unreliability, thus misapplying the *Manson* test. However, as the findings indicate, the court indeed distinguished between the two issues, in one instance observing that "further suggestion . . . poisoned the credibility of what little value was left." Both this indication that unnecessary suggestivity gave rise to the likelihood of misidentification, and the court's ultimate conclusion that the procedure was

"inherently suggestive, and the identification unreliable," reflect proper application of the two-step *Manson* test. The trial court's conclusion that the identification procedure was suggestive and the identification unreliable is supported by its findings based on the credible evidence.

Because it has long been judicial policy not to address constitutional questions unless their determination is essential to disposition, see, e.g., *Blanchard* v. *City of Barre*, 77 Vt. 420, 431, 60 A. 970, 973 (1905), our decision in defendant's favor under established federal constitutional law renders it unnecessary to address his arguments for first-impression interpretation of the Vermont Constitution. See *State* v. *Santi*, 132 Vt. 615, 618, 326 A.2d 149, 151 (1974); *Juaire* v. *Juaire*, 128 Vt. 149, 152, 259 A.2d 786, 788 (1969).

*Affirmed. Cause remanded for further proceedings in accordance with this opinion.*