UNITED STATES of America,

v.

Mario WILLIAMS, Defendant.

No. 97-CR-0004A.

United States District Court,
W.D. New York.

March 24, 1998.

Kimberly A. Schechter, Federal Public Defender, Buffalo, NY, for Mario Williams.

Alan R. Feuerstein, Margot S. Bennett, Buffalo, NY, for Roxanne Lumpkin.

Christopher A. Buscaglia, U.S. Atty.'s Office, Buffalo, NY, for U.S.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1) on January 27, 1997. On June 9, 1997, defendant filed a motion to suppress identification testimony.

On December 24, 1997, Magistrate Judge Heckman filed a Report and Recommendation, recommending that defendant's motion be denied.

Objections to the Magistrate Judge's Report and Recommendation were filed by defendant on February 11, 1998, and the government filed a response in opposition thereto on February 27, 1998. Oral argument on the objections was held on March 23, 1998.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion for suppression of identification testimony is denied.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

Defendant Williams has moved to preclude trial identification testimony by undercover police investigators James Galie, Jr. and Christine Ann Scherer–Young. On September 6 and 24, 1997, the Court conducted a suppression hearing pursuant to the defendant's motion.

For the reasons set forth below, it is recommended that the defendant's motion be denied.

### BACKGROUND

This prosecution of the defendant arose out of a Career Criminal Task Force investigation of drug trafficking in the Townsend/Detroit/Peckham Street area in the City of Buffalo. On two occasions on September 25, 1996, undercover police investigators James Galie, Jr. and Christine Scherer–Young purchased a quantity of crack cocaine from an individual later identified as the defendant, Mario Williams. Officer Galie testified that the first transaction was conducted through co-defendant Roxanne Lumpkin while Galie and Scherer–Young waited in their undercover car. The undercover officers were wearing wires monitored by detective McMahon. A video camera was also mounted in the back of the vehicle which

focused on the back of detective Galie's head and the driver's side window. Williams was not recorded by video or voice in either transaction.

Galie testified that the first purchase occurred shortly before noon on September 25. Roxanne Lumpkin approached the investigators' car as it pulled to the curb on Townsend Street. After she was unable to obtain drugs for the investigators, she got into the car and directed them to the corner of Detroit and Peckham Streets. There, she left the car, crossed the street, and met the defendant for 20 to 30 seconds. During this meeting, both officers viewed the defendant's face without obstruction from a distance of approximately 15 feet. They observed the defendant hand a package of suspected drugs to Lumpkin, who then crossed the street and handed the package to Officer Galie. Immediately after the transaction, Officer Galie broadcast a description of the defendant over the police radio.

Approximately two 'hours later, the same police investigators again approached the defendant in the same location and purchased additional drugs through an unidentified intermediary. On that occasion, both investigators had a clear view of the defendant's face. Both immediately recognized him as the same person who earlier met and sold drugs to Roxanne Lumpkin.

Officer Galie's physical descriptions of the defendant were accurate except as to his height. Galie estimated the defendant's height to be 5′8″ tall. In fact, the defendant is 6′4″ tall. Trooper Scherer–Young gave substantially the same testimony as Officer Galie, except that she estimated his height as being approximately 5′11″.

Within forty minutes of the second distribution of drugs by the defendant, both Galie and Scherer–Young independently viewed a single photograph of the defendant shown to them by detective McMahon. Each immediately identified it as a picture of the defendant.

## DISCUSSION

■ Defendant challenges the admission of in-court identifications of him by officer Galie and trooper Scherer–Young, arguing that the single photograph was an impermissibly suggestive identification procedure. The general principles governing this challenge are well established. The defendant has a due process right not to be the object of suggestive police identification procedures that create " 'a very substantial likelihood of irreparable misidentification.' " *United States v. Concepcion,* 983 F.2d 369, 377 (2d Cir.1992), *cert. denied,* 510 U.S. 856, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). This principle applies both to showups, *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and to photographic identifications, *Simmons, supra,* 390 U.S. at ·384.

■ The first step is to determine whether the identification procedure used was unduly suggestive. In general, "[t]he practice of showing suspects singly to persons for the purpose of identification, not as part of a lineup, has been widely condemned." *Stovall, supra,* 388 U.S. at 302. Although under extenuating circumstances a showup might be permissible, as for example when a victim is believed to be dying, such practices should be avoided where there is no overriding necessity for their use.

■ In determining whether a showup is constitutionally permissible, the court must carefully consider all of the surrounding circumstances. *Concepcion, supra,* 983 F.2d at 377. These same principles apply to the use of a single photograph. Where no extenuating circumstances justify the procedure, the exhibition of a single photograph is considered unnecessarily suggestive. *See, e.g., United States v. Bubar,* 567 F.2d 192, 197 (2d Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977) (noting that single photographic display is impermissibly suggestive absent exigent circumstances); *Mysholowsky v. People,* 535 F.2d 194, 197 (2d Cir.1976); *see also Simmons, supra,* 390 U.S. at 384–85 (singly presented photograph absent exigent circumstances is impermissibly suggestive photographic identification procedure).

If the challenged identification procedure is unduly suggestive, the court must then proceed to the second step in the analysis. The second step requires an analysis of whether the in-court identification will be the product of the suggestive procedure or whether instead it will be independently reliable. Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witnesses' degree of attention, the accuracy of the witnesses' prior description of the criminal, the level of certainty demonstrated by the witness of the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *accord Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

■ Applying this two-step analysis to this case, I find as an initial matter that the use of a single photograph to identify the defendant was impermissibly suggestive. The government has not offered any exigent circumstances or emergency which prevented detective McMahon from assembling a suitable array of photographs. Indeed, as defense counsel points out, the defendant was not arrested until months after the sales.

The government cites *United States v. Matthews,* 20 F.3d 538, 547 (2d Cir.1994), as authority to suggest that a single photograph is not impermissibly suggestive. *Matthews,* however, dealt with objections to an in-court identification where no pretrial identification was made. Accordingly, this case does not support the government's position.

■ It is therefore necessary to turn to the second prong of the analysis to determine whether under the totality of circumstances there is a substantial likelihood that the in-court identification will be the product of the suggestive procedures. Evaluating the factors set forth in *Neil v. Biggers,* I find that the in-court identification by the two police officers should be allowed.

The first factor to be analyzed is the opportunity to view the criminal. Both investigators testified that they had an unobstructed view of the defendant's face for 20 to 30 seconds during the first transaction, and for somewhat less than a minute during the second transaction. The weather was clear, and the observations occurred during daylight between noon and 2:50 p.m.

Significantly, the two witnesses are not civilians unaccustomed to viewing criminal activities or crime victims under stress. Rather, they are trained police officers performing their duties. As recognized by the United States Supreme Court in *Manson v. Brathwaite, supra,* a police officer is in a different circumstance than a crime victim in making identification testimony. The court stated:

> [The policeman], as a specially trained, assigned and experienced officer, ... could be expected to pay scrupulous attention to detail, for he knew that subsequently he would have to find and arrest his vendor. In addition, he knew that his claimed observations would be subject later to close scrutiny and examination at any trial.

432 U.S. at 115.

Here, the officers were well aware that they would be called on at a future date to make an identification of the defendant. They did not hesitate in their identification during the suppression hearing.

The second factor to be evaluated is the witness' degree of attention. Again, this factor favors the government. Both officers gave the transactions their full attention, anticipating later testimony.

The fourth factor is the witness' level of certainty. Again, both investigators demonstrated certainty in their identification.

The fifth factor is the time between the crime and the confrontation. This again favors the government. Here, the length of time between the crime and the identification was approximately 40 minutes.

The third factor, the accuracy of the description, is the only one requiring substantial discussion. The undisputed testimony is that Officer Galie estimated the defendant's height to be 5′8″ tall, whereas in fact the defendant is 6′4″ tall. The remaining description (black male with thin build in his early 20s) involves general characteristics not unique to this defendant. Defendant also argues that Scherer–Young's testimony is in-

consistent with detective Galie's because she describes him as 5'11".

The discrepancy in the officers' estimate of the defendant's height was not explained at the hearing. However, I do not believe that it renders the in-court identification inadmissible. Officer Galie's description of the defendant was otherwise accurate, and the other *Neil v. Biggers* factors heavily favor the government. It is well-settled that failure of any one of the five *Neil v. Biggers* factors is not fatal to admissibility. Another court has found a seven-inch discrepancy in the witness' estimate of a suspect's height to be unimportant so long as the other descriptive factors are accurate. *See United States v. Lau*, 828 F.2d 871, 875 (1st Cir.1987).

Balancing all of these factors, I find that under the totality of circumstances there is not a substantial likelihood that the in-court identification of the defendant by the officers will be the product of the suggestive procedure. As the government points out, the ultimate protection against a less-than-perfect identification procedure lies in the trial jury. "Evidence with some element of untrustworthiness is customary grist for the jury mill." *Manson, supra*, 432 U.S. at 116. The discrepancy in the officers' description of the defendant's height goes to the weight and not the admissibility of the identification procedure.

### *CONCLUSION*

For the foregoing reasons, it is recommended that the defendant's motion to suppress identification testimony be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir.1988).

***Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.*** *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." ***Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.***

Let the Clerk send a copy of this Order and Report and Recommendation to the attorneys for the parties.

**SO ORDERED.**