*Barron v. Menard*, 46-1-16 Wncv (Teachout, J., Apr. 7, 2017)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 46-1-16 Wncv** |

**DAVID BARRON**
    **Plaintiff**

    **v.**

**LISA MENARD, Commissioner,**
**Vermont Department of Corrections, et al.**
    **Defendants**

### DECISION
### The State's Motion for Summary Judgment,
### Motion to Amend, and Motion to Strike

Plaintiff David Barron, a Vermont inmate currently housed in a Michigan facility, claims that the Department of Corrections has wrongfully burdened his sincerely held religious beliefs in numerous ways. He seeks injunctive relief and compensatory damages of $3,000,000, half of which, he asserts, he would like to donate to a children's hospital in Vermont. The State has filed a motion for summary judgment arguing that Mr. Barron's claim fails under the Free Exercise Clause of the U.S. Constitution, the corresponding provision of the Vermont Constitution, Vt. Const. ch. I, art. 3, and 28 V.S.A. § 803, and that each defendant has qualified immunity.[1] In opposition to summary judgment, Mr. Barron clarifies that his claim is based on his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc–2000cc-5 (RLUIPA). The State objects that Mr. Barron failed to raise any RLUIPA claim in the complaint. The court concludes that the complaint fairly encompasses RLUIPA and, for the reasons described below, denies summary judgment at this time.

Mr. Barron describes himself as "a Witchcraft High Priest founder in the denomination Irish Celtic Gothic Witchcraft called Spider Witchcraft/Wicca who started learning his craft at the age of 10 years-old learning Irish Celtic Witchcraft through his Mother, and then adopted Gothic Wicca through Raven Digitals." He claims to have been practicing for 36 years and teaching for 18. There is no dispute that, when he was transferred to the Michigan facility, he started making requests for various supplies or other "accommodations" related to his Wiccan beliefs. He filed some evidence of related administrative requests with his complaint, including one formal grievance.[2]

---

[1] The named defendants include the Vermont Commissioner of the Department of Corrections and several employees of the Michigan facility. The complaint does not specify whether Mr. Barron intended to sue Defendants in their personal or official capacities, or both. Commissioner Menard's waiver of service indicates that she waived service in her personal capacity only. There is no return of service indicating that she was served in her official capacity. Each of the other named defendants waived service with no indication of capacity. It is unclear in which capacities they appear in this case. Because this matter does not affect this decision, for simplicity, the court will refer to all defendants collectively as the State.

[2] Mr. Barron claims to have filed many accommodation forms with the DOC. It is not clear whether the one

The formal grievance forms that are in the record show that his requests became more detailed and expansive as he proceeded through the administrative process. His final grievance form, the appeal to the commissioner, is dated December 9, 2015, and there is no indication in the record that he received a response. He filed the complaint in this case on January 25, 2016.

Mr. Barron's administrative filings clearly reflect citations to RLUIPA. In his complaint, however, he expressly cites the U.S. and Vermont constitutions and 28 V.S.A. § 803 only. In seeking summary judgment, the State addressed those grounds and did not brief RLUIPA. In opposition, Mr. Barron relies almost exclusively on RLUIPA as the basis for his claims and argues that the court should interpret the complaint to encompass RLUIPA.[3]

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>     (1) is in furtherance of a compelling governmental interest; and
>     (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). This standard is substantially more protective of free exercise rights than the First Amendment, *Cutter v. Wilkinson*, 544 U.S. 709, 714–16 (2005), and presumably the Vermont Constitution.[4] But see *Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (RLUIPA does not operate to waive a State's sovereign immunity to damages claims); *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) ("RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities.").

Despite the lack of any express mention of RLUIPA in the complaint, the thrust of the complaint does not imply that Mr. Barron intended to abandon RLUIPA once his administrative grievance came to court. RLUIPA provides a different legal basis for Mr. Barron's claim, but it is not an altogether different claim from his constitutional ones. The allegations that support all of Mr. Barron's claims are the same.

The court construes pleadings "so . . . as to do substantial justice," V.R.C.P. 8(f), and because Mr. Barron clearly relied on RLUIPA in his administrative filings, the court interprets the complaint to encompass RLUIPA as a basis for his claims. His failure to cite that statute in the complaint is a technical omission only.[5]

---

grievance in the record is his only one or whether there are others.

[3] It is unclear whether Mr. Barron is seeking to proceed exclusively in reliance on RLUIPA at this point, or whether he wishes to rely on the U.S. and Vermont constitutions and 28 V.S.A. § 803.

[4] It appears to be substantially more protective than 28 V.S.A. § 803 as well.

[5] In briefing, Mr. Barron cites the Americans with Disabilities Act. It is unclear why. However, it is clear that neither his administrative grievance nor the complaint in any way implies that he was trying to raise an ADA claim.

The State did not seek summary judgment on the basis of RLUIPA.  In its reply, it cursorily offers that its motion should be granted on the RLUIPA claim for the same reasons that it should be granted on the constitutional claims, which it addressed.  This is insufficient, however.  RLUIPA is more protective and the analysis is not the same as for the constitutional claims.  In addition, the summary judgment record was not developed adequately for the court to rule on RLUIPA.  See *Holt v. Hobbs*, 135 S.Ct. 853, 863 (2015) ("But RLUIPA . . . contemplates a 'more focused' inquiry and 'requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." (citations omitted)).

Even if the court otherwise were able to rule on the constitutional claims, it would not do so at this time.  If Mr. Barron is entitled to relief under RLUIPA, there may be no need to address his constitutional claims.  If he is not entitled to any relief under RLUIPA, he may not be entitled to any relief on his constitutional claims.  Thus, this case may well not require any rulings on any constitutional issues.  "[I]t has long been judicial policy not to address constitutional questions unless their determination is essential to disposition." *State v. Baxter*, 145 Vt. 295, 299 (1984).

Although the State's motion for summary judgment must be denied, the parties' filings in connection with the motion have made clear that there are problems related to the subject matter of the case.  It is unclear which accommodations presently sought by Mr. Barron were raised during the administrative process.  The administrative grievance paperwork that is in the record reflects changing and expanding requests.  The DOC appears to have treated it as a limited request for a religious feast to the extent that it responded at all.  In the complaint, Mr. Barron's requests are substantially broader than anything appearing in the grievance paperwork.  In his opposition to summary judgment, his requests are yet more extensive.  It is unclear what issues have been properly preserved.  The court can only address issues that have been properly raised and reviewed during the administrative process. *Pratt v. Pallito*, 2017 VT 22, ¶ 16 ("[T]o properly preserve an issue, a party must present the issue to the administrative agency 'with specificity and clarity in a manner which gives the [agency] a fair opportunity to rule on it.'" (citation omitted)); *Cutter*, 544 U.S. at 723 n.12 ("State prison officials make the first judgment about whether to provide a particular accommodation, for a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); see also *Jordan v. State Agency of Transp.*, 166 Vt. 509, 511 (1997) (discussing the closely related concept of exhaustion of administrative remedies).

It appears that some of Mr. Barron's requests may be moot.  The State asserts that it has granted some, many, or all of Mr. Barron's requests for purchases already, without further specifying.  Mr. Barron asserts that some of those are inadequate and does not address others.  Also, the State notes that Mr. Barron could have requested the purchase of some items of interest from the inmate recreation fund.  Mr. Barron's only response was that he was unaware that he could do so until the State pointed it out in this case.[6]

---

There is no ADA claim in this case.

[6] This points up an important reason for the exhaustion requirement.  An administrative response to a grievance may

3

Many of Mr. Barron's requests may be fully outside the scope of RLUIPA. Many of the disputed "accommodations" are not accommodations but demands that Mr. Barron is making for the DOC to affirmatively produce funding for religious supplies that he finds desirable for his Wicca practice and his professed interest in teaching it to others. However, while providing an appropriate accommodation from a policy that substantially burdens one's religious beliefs may cause a government to incur some expense, it creates no right in any person "to receive government funding for a religious activity." 42 U.S.C. § 2000cc-3(c); see, e.g., *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1320 (10th Cir. 2010) (noting that RLUIPA does not require the government "to affirmatively subsidize religion"). If it did, the interest in protecting free exercise rights would quickly overwhelm establishment clause limitations.

Other requests are simply too unclear to address at this time. His requests around food are especially unclear. He clearly wants to eat pork, which apparently is not available in his facility, and objects that Halal and Kosher meals are available. There is no clearly articulated religious basis for needing to eat pork. It also is unclear whether he is alleging that he is being forced to eat Kosher or Halal meals and that doing so in some way forces him to violate his beliefs. He also makes allegations about either processed or unprocessed meat, but it is entirely unclear what "processing" he is referring to and why vegetarian meals are inadequate.

Finally, the State's principal argument against granting Mr. Barron's requested "accommodations" is not based on evidence responsive to a specific request and its burden of proof—it is simply that if it did the same for everyone it would not be able to maintain order and financial viability. The U.S. Supreme Court has clearly rejected this type of broad-brush argument under RLUIPA. *Holt*, 135 S.Ct. at 866 ("At bottom, this argument is but another formulation of the 'classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions.' We have rejected a similar argument in analogous contexts, and we reject it again today." (citation omitted)). It fares no better here.

For these reasons, the State is not entitled to summary judgment at this time.

The State seeks leave to amend its answer to include qualified immunity among its defenses. Mr. Barron has not opposed this motion, and the court grants it.

The State asks the court to strike Mr. Barron's surreply because he did not seek leave to file it. This motion is denied. The surreply has no material effect on the court's decision.

Before the case proceeds any further it is necessary to assure that any remaining unsatisfied requests for accommodations were properly presented administratively.. In other words, it is necessary for Mr. Barron to clearly specify the particular accommodations he currently continues to seek and for which he seeks relief *and* for the court to be assured that those specific items were addressed at the administrative level and thus are proper for this court's consideration. See the Order below for a procedure for clarifying this issue.

---

actually resolve it and avoid wasting everyone's resources on unnecessary litigation.

4

ORDER

1.  The State's motion for summary judgment is denied;
2.  The State's motion to amend is granted;
3.  The State's motion to strike is denied;
4.  No later than May 1, 2017, Mr. Barron shall submit an itemized list of specific actions on the part of the State for which he seeks relief, and failure to submit such a list shall result in dismissal of this case with prejudice.
5.  If Mr. Barron files the itemized list described in paragraph 4, the State shall have 15 days to submit a response with any argument that the item was not identified and raised by Mr. Barron at the administrative level and therefore the court should not address it, and if such a reply is filed, Mr. Barron shall have an additional 15 days to file a response to it.

Dated at Montpelier, Vermont this _____ day of April 2017.

_____
Mary Miles Teachout
Superior Judge

5