## State of Vermont v. Adam O. Corliss

[721 A.2d 438]

No. 96-035

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed February 6, 1998

Motions for Reargument Denied September 15, 1998 and September 25, 1998

*M. Patricia Zimmerman*, Windsor County State's Attorney, White River Junction, for Plaintiff-Appellee.

*Michael Rose*, St. Albans, for Defendant-Appellant.

**Amestoy, C.J.** Defendant Adam Corliss appeals his first degree murder conviction for the killing of Jennifer Little. He argues that the trial court erred by (1) limiting the scope of certain testimony linking another person to the murder, (2) denying defendant's request for a jury instruction that it may convict on a lesser-related offense, and (3) failing to follow statutory guidelines for sentencing in murder convictions. We affirm.

On the night of February 4, 1994, Jennifer Little was repeatedly stabbed in the front seat of her car in Springfield, Vermont. She later died in a nearby snowbank. The defendant and the victim knew each other and were reportedly together that evening to purchase drugs from another individual. Police found defendant's buck knife in the road near the victim's body, and found defendant's footprints in the snow next to her. The medical examiner in the case testified that the victim had sustained nine stab wounds, of which three were made to the victim's hands as she raised them in defense. Later that same evening, defendant purchased marijuana with bills soaked in the victim's blood.

At trial defendant testified that another individual, Justin Durphy, had committed the murder. He contended that Durphy had been in the front seat of the car and had stabbed the victim while defendant sat in the back. Defendant explained that he had lied to police about the details of the murder and provided them with false leads because Durphy had threatened him with harm if he did not do so. There was no physical evidence linking Justin Durphy with the murder, and no testimony placed Justin Durphy with the victim on the night of the murder, except that of defendant.

To support his theory that Justin Durphy had committed the murder, defendant sought to have nine witnesses testify that Durphy had expressed a desire to kill the victim or claimed to have killed her. The State filed a motion in limine to exclude the testimony. The trial court permitted the witnesses to testify about Durphy's admissions, but limited the scope of three of the witnesses so that they would not disclose to the jury certain factual circumstances in which Durphy's admissions were made.

Defendant requested from the court a lesser-related offense instruction for compounding a felony. Defendant based the request on his testimony that he had provided police with false information about the killing because Justin Durphy threatened him with harm if he did not. When the court denied the request, defendant waived his right to

have the court instruct the jury on any lesser-included offenses. The jury returned a verdict of first degree murder, and the court sentenced defendant to fifty years to life imprisonment.

## I.

Defendant first challenges the trial court's decision to limit the scope of testimony from certain defense witnesses whose testimony was offered to establish that Durphy had committed the murder. Two witnesses testified that, before the murder, they had heard Durphy express anger at Jennifer Little and say he wanted to kill her. The trial court allowed both of these witnesses to testify fully on these matters at trial. Seven other witnesses testified that, after Jennifer Little was killed, Durphy had claimed responsibility for the murder. The court allowed each of them to testify but limited the scope of testimony of six of the witnesses. Defendant takes issue with the trial court's rulings with respect to three of the witnesses.

The first witness at issue, Christina Sanborn, testified in camera that Durphy made a sexual advance toward her, rubbed against her, and threatened to kill her as he had the victim if she did not do as he told. Sanborn reported that Durphy had similarly threatened her on five or six other occasions. Another witness, Tammy Sinclair, testified that after Durphy had allegedly beaten a friend of hers, she confronted Durphy. She alleged that Durphy threatened to kill her as he had Jennifer Little if she didn't leave him alone. A third witness, police lieutenant Barbara Higgins, testified that a thirteen year old girl had reported an identical threat in the course of Durphy's alleged sexual assault of the girl.

The trial court found that the proffered testimony was relevant in that it tended to show that Durphy, not defendant, had committed the murder. The court found that, although the proffered testimony was hearsay, each of the threatening statements in which Durphy claimed to have killed the victim qualified as a hearsay exception because, at the time it was uttered, the statement "so far tended to subject him to . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." V.R.E. 804(b)(3).[1] The court also considered the requirement that "[a]

---

[1] Under V.R.E. 804(b)(3), a hearsay statement is admissible only if the declarant, in this case Durphy, is unavailable as a witness. While the record is unclear on this point, the district court appears to have determined that Durphy would invoke his privilege under the United States and Vermont Constitutions to forego testifying against himself, and

statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.* Satisfying this condition requires defendant to establish that the other person had both motive and opportunity to commit the crime. See *State v. Gilman*, 158 Vt. 210, 214, 608 A.2d 660, 663 (1992).

Defense counsel conceded that, apart from the hearsay testimony, the only other evidence of Durphy's connection to the crime would come from defendant's testimony.[2] The trial court concluded that the defense had not technically met its burden to provide corroborating evidence of Durphy's commission of the crime, and that the testimony was thus excludable. The court nonetheless found the testimony credible and decided to allow its admission. The court limited the scope of certain witness testimony to exclude matters deemed irrelevant or otherwise inadmissible under the rules of evidence.

Accordingly, the court ruled that Sanborn could testify to the jury about Durphy's actual threats, but not mention Durphy's unwelcome sexual advance along with which the threat was made. The court found the incident irrelevant and remote in time to the murder of Jennifer Little and thus excludable under V.R.E. 402. Moreover, the court reasoned, evidence of Durphy's "bad act" of an unwelcome sexual advance amounted to inadmissible character evidence. See V.R.E. 608 (character evidence of witness who is not defendant or victim admitted only if probative of credibility; specific incidents of witness conduct may not be proved by extrinsic evidence). The court similarly limited Tammy Sinclair's testimony to Durphy's claims that he murdered Jennifer Little, and excluded reference to Durphy's alleged beating of their mutual friend. Lieutenant Higgins's testimony about the thirteen year old girl's reported sexual assault by Durphy was limited by the court to Durphy's threats, and not the alleged assault on the girl. The trial court ruled that acts other than Durphy's threats — to the extent they were relevant — were

---

thereby be "unavailable" as a witness. See V.R.E. 804(a)(1) (declarant considered "unavailable" as a witness where he invokes a privilege from testifying about the subject matter of his statement). At trial, Durphy testified about some, but not all, of the statements attributed to him. For those statements on which Durphy testified, the district court could have excluded the hearsay statements from other witnesses because the declarant was available to testify.

[2] At trial, a witness testified that she had learned from Durphy that Jennifer Little owed Durphy money, thus arguably establishing a motive for Durphy to kill Little. No evidence, however, was introduced to rebut the statements of witnesses and Durphy who testified that he was elsewhere on the night of the murder and did not have the opportunity to commit the crime.

substantially outweighed by the danger of unfair prejudice and confusion of the issues. See V.R.E. 403.

Defendant contends that the trial court's limitations on the scope of testimony by these three witnesses unfairly "sanitized" the testimony. Defendant claims that without the latitude to explore the full factual context in which Durphy uttered the threats, he was deprived of his constitutional rights to present exculpatory evidence and confront witnesses against him. We find on these facts no error in the court's evidentiary rulings.

A defendant has a right to present exculpatory evidence to aid his defense and to confront witnesses brought against him. U.S. Const. amend. VI; Vt. Const. ch. I, art. 10. Defendant's proffered evidence, however, must be relevant and otherwise admissible under the rules of evidence. See *Gilman*, 158 Vt. at 214, 608 A.2d at 663; *State v. Kelly*, 131 Vt. 582, 588, 312 A.2d 906, 909 (1973). A defendant does not have the right to introduce any and all evidence that he deems will aid his defense. See *State v. Patnaude*, 140 Vt. 361, 369-70, 438 A.2d 402, 405 (1981) (defendant not entitled to weigh his Confrontation Clause interest against interests of the State unless the evidence passes tests of logical and legal relevancy). Thus, where evidence proffered by a defendant is irrelevant to the case being tried, it may be properly excluded. See V.R.E. 402. Where evidence is relevant, it may nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or other considerations. See V.R.E. 403; *State v. Larose*, 150 Vt. 363, 368, 554 A.2d 227, 231 (1988). Evidence of the character of a witness is admissible only to the extent it is relevant to the credibility of that witness. See V.R.E. 608(b); *State v. Blair*, 155 Vt. 271, 275 n.1, 583 A.2d 591, 593 n.1 (1990) (evidence of witness's character is relevant, if at all, if it relates solely to witness's character for truthfulness). Even then, the witness's character for veracity or duplicity may be supported or impeached only in the form of opinion or reputation. See V.R.E. 608(a). Specific instances of conduct of a witness may be referenced only through cross-examination of the witness, and may not be introduced by extrinsic evidence. See V.R.E. 608(b), Reporter's Notes (rule prevents cross-examination of prejudicial or unnecessarily embarrassing scope). Resolving evidentiary questions where evidence is admissible for one purpose but excludable for another is given to the discretion of the trial court. See *State v. Davis*, 165 Vt. 240, 250, 683 A.2d 1, 7 (1996). We will not reverse a trial court's evidentiary rulings unless there was an abuse of discretion. See *State v. Ives*, 162 Vt. 131, 142, 648 A.2d 129, 135 (1994).

■ The trial court's decision to admit testimony about Durphy's claims to have killed the victim, while limiting certain testimony about the circumstances in which the statements were made, properly balanced the risk of confusing issues and misleading the jury against the defendant's state and federal constitutional rights to present exculpatory evidence. See *State v. Kennison*, 149 Vt. 643, 651, 546 A.2d 190, 195 (1987).

## II.

Defendant next asserts that the trial court erred by denying his request for a jury instruction on the lesser-related offense of "compounding a felony."[3] The trial court first considered defendant's request under the "elements test" for providing jury instruction on lesser-included offenses. See *State v. Williams*, 154 Vt. 76, 82, 574 A.2d 1264, 1267 (1990) (jury instruction on lesser-included offense appropriate only where each element of the lesser offense is a necessary element of the charged offense). It found that the elements of compounding a felony do not overlap with the elements of first degree murder. The trial court denied defendant's request for the lesser-related offense instruction, because, while statute and case law mandate a lesser-included offense charge, neither the Legislature nor the Vermont courts have required such an instruction. We find no error in the trial court's decision not to instruct the jury on the lesser-related offense.

A defendant is entitled to have the court present to the jury issues raised by the defense based on the evidence "that they might confront it, consider it, and resolve its truth or falsity by their verdict." *State v. Brisson*, 119 Vt. 48, 53, 117 A.2d 255, 257-58 (1955); see *State v. Drown*, 148 Vt. 311, 312, 532 A.2d 575, 576 (1987). Consistent with this premise is the longstanding practice of affording a criminal defendant with jury instructions on lesser-included offenses. See *State v. Bolio*, 159 Vt. 250, 252, 617 A.2d 885, 886 (1992); *State v. Bourn*, 139 Vt. 14, 15, 421 A.2d 1281, 1281-82 (1980); *State v. Long*, 95 Vt. 485, 496, 115 A. 734, 739 (1922); 13 V.S.A. § 2310; V.R.Cr.P. 31(c). Further, an offense will be treated as a lesser-included offense only if each of its elements is "'always a necessary element' of the greater offense."

---

[3] "A person having knowledge of the commission of a felony who takes money, or a gratuity or reward, or an engagement therefor, upon an agreement or understanding, expressed or implied, to compound or conceal such felony or not to prosecute therefor, or not to give evidence thereof, shall be imprisoned not more than ten years or fined not more than $1,000.00, or both." 13 V.S.A. § 8.

*State v. Forbes*, 147 Vt. 612, 617, 523 A.2d 1232, 1235 (1987) (quoting *Illinois v. Vitale*, 447 U.S. 410, 419 (1980)). Where a jury is convinced that a defendant has committed some crime, but is not fully convinced the defendant is guilty of the charged offense, instruction on a lesser-included offense "ensures that the jury will accord the defendant the full benefit of the reasonable-doubt standard." *Beck v. Alabama*, 447 U.S. 625, 634 (1980).

This Court has never expressly addressed whether a trial court must, upon request from the defendant, instruct the jury on a lesser-related offense. See, e.g., *State v. Kelley*, 163 Vt. 325, 328, 664 A.2d 708, 710 (1995). The practice is followed in only a minority of jurisdictions. See, e.g., *People v. Geiger*, 674 P.2d 1303, 1309, 1315-16 (Cal. 1984) (confining lesser-offense instruction to strict confines of statutory elements of charged offense described as "mechanical"; instruction on lesser-related offense deemed more responsive to underlying purpose of lesser-included offense doctrine); *Moore v. State*, 776 P.2d 1235, 1238 (Nev. 1989).[4]

Those jurisdictions that have recognized lesser-related offense instruction caution against the danger of misapplication of the rule. The lesser-related offense must have an "'inherent' relationship between the greater and lesser offenses," in order to avoid the situation where "defense counsel might be tempted to press the jury for leniency by requesting lesser included offense instructions on every lesser crime that could arguably be made out from any evidence that happened to be introduced at trial." *Geiger*, 674 P.2d at 1308-09 (quoting *United States v. Whitaker*, 447 F.2d 314, 319 (D.C. Cir. 1971)). Under the test enunciated in *Geiger*, a court should instruct a jury on a lesser-related offense when: (1) the lesser offense is closely related to that charged, (2) there is evidence of its commission, and (3)

---

[4] See also *State v. Gopher*, 633 P.2d 1195, 1196-97 (Mont. 1981); *State v. Purnell*, 601 A.2d 175, 181 (N.J. 1992) (all forms of homicide rationally supported by the evidence, whether they be lesser-included or alternative offenses, should be placed before the jury). The majority of state jurisdictions, however, do not instruct the jury on lesser-related offenses. See, e.g., *State v. Fisher*, 686 P.2d 750, 770 (Ariz. 1984); *State v. MacFarlane*, 450 A.2d 374, 377 (Conn. 1982); *State v. Laws*, 661 S.W.2d 526, 530 (Mo. 1983); *State v. Boone*, 406 A.2d 113, 114 (N.H. 1979). Federal courts do not provide instruction on lesser-related offenses because Federal Rules of Criminal Procedure expressly limit instruction to those lesser offenses "necessarily included" in the offense charged. Fed. R. Crim. P. 31(c). See also *Schmuck v. United States*, 489 U.S. 705, 716 (1989) (instruction on lesser offense not given to jury unless elements of lesser offense are a subset of elements of greater offense; where lesser offense requires element not required for the greater, defendant not entitled to instruction).

defendant's theory of the case is consistent with the lesser-related offense. See *id.* at 1304; accord *Moore*, 776 P.2d at 1239.

We do not reach the question of whether it is ever appropriate to instruct the jury on a lesser-related offense because, even if we applied a standard permitting such instruction, defendant in this case would not be entitled to the instruction. This case does not satisfy the three-prong *Geiger* test. There was no evidence of the offense of compounding the felony presented at trial, nor was this offense consistent with defendant's theory of the case.

The statute defendant relies upon requires that the person having knowledge of the commission of a felony take money "upon an agreement or understanding" to compound or conceal the felony. 13 V.S.A. § 8. "The agreement is essential" to the offense of compounding the felony at common law or under the typical compounding statute. 2 W. LaFave & A. Scott, Substantive Criminal Law § 6.9(c), at 176 (1986). In this case, defendant never claimed any agreement or understanding that the money was received as consideration for concealing the felony. Rather, he testified that he did not realize that Durphy gave him money until after they had parted company. Defendant's theory of the case and his testimony at trial was that he concealed Durphy's identity because Durphy threatened to kill defendant's girlfriend and her family. Defendant testified repeatedly that he lied to the police because Durphy was threatening his girlfriend.

Under defendant's theory, he committed no crime. He concealed the felony under duress. If the jury had believed his testimony, he would have been acquitted. Neither the defense theory nor the evidence supported a charge for compounding the felony. See, e.g., *People v. Boyd*, 212 Cal. Rptr. 873, 880 (Ct. App. 1985) (defendant's denial of any offense is completely inconsistent with an instruction on the claimed lesser-related offense); *Ewish v. State*, 871 P.2d 306, 311 (Nev. 1994) (defendant denies any culpability; consequently, instruction on lesser-related offense is not required). Accordingly, there was no error in refusing to give the jury an instruction on this offense.

■ Moreover, defendant's "all or nothing" strategy of declining to have any lesser-*included* offenses instructed to the jury belies his contention that his request for a lesser-*related* offense instruction was intended to avoid confronting the trier of fact with no option other than conviction or acquittal when the evidence shows that the defendant is guilty of some crime but not necessarily the one charged. See *Geiger*, 674 P.2d at 1307 ("'defendant has no legitimate interest in

compelling the jury to adopt an all or nothing approach to the issue of guilt. Our courts are not gambling halls but forums for the discovery of truth.'") (quoting *People v. St. Martin*, 463 P.2d 390, 394 (Cal. 1970)). The trial court committed no error in its refusal to instruct on a lesser-related offense.

## III.

Defendant lastly claims error in the court's application of the guidelines for sentencing individuals convicted of murder set forth in 13 V.S.A. § 2303. He maintains that the court erred by (1) finding the murder of the victim "particularly severe, brutal or cruel," 13 V.S.A. § 2303(d)(5); (2) considering the common law sentencing factors of deterrence, rehabilitation, and punishment; and (3) failing to "enter written findings of fact, summarizing the offense and the defendant's participation in it . . . [and] concerning aggravating and mitigating factors." 13 V.S.A. § 2303(c). We address these three arguments in turn.

■ Trial courts have wide discretion in imposing penalties, and we will not reverse unless the court strays from statutory limits or abuses its discretion. See *State v. Neale*, 145 Vt. 423, 435, 491 A.2d 1025, 1033 (1985); *State v. Cyr*, 141 Vt. 355, 358, 449 A.2d 926, 927 (1982). Under the statutory scheme for sentencing an individual convicted of murder, the court is to consider aggravating and mitigating factors as specifically set forth in the statute, see 13 V.S.A. § 2303(d)(1)-(7), (e)(1)-(6), or as suggested by the parties, see *id.* § 2303(d)(8), (e)(7). The court retains discretion to apply or reject the factors and to interpret the meaning of individual factors. See *State v. Kelley*, 163 Vt. at 330-31, 664 A.2d at 711-12. We will uphold the trial court's determination of aggravating and mitigating factors unless it is clearly erroneous. See *State v. Verrinder*, 161 Vt. 250, 270, 637 A.2d 1382, 1394 (1993). Findings made by the court will not be disturbed if they are supported by credible evidence, even where there may be substantial evidence in the record to the contrary. See *State v. Harvey*, 145 Vt. 654, 657, 497 A.2d 356, 357 (1985).

■ Defendant first argues that the court erred in finding the murder "particularly severe, brutal or cruel." 13 V.S.A. § 2303(d)(5). In so finding, the trial court observed that defendant was a trusted friend of the victim, and that he repeatedly stabbed her after he had inflicted the fatal wound to her carotid artery. Moreover, the court observed that several of the stabbings were to the victim's hands as

she raised them up in defense. We find no abuse of discretion in the court's conclusion drawn from the evidence. See *State v. Allain*, No. 94-164 (Vt. July 19, 1995) (mem.) (trial court did not abuse its discretion in finding murder particularly brutal, severe, or cruel where attack was unprovoked, entirely random, and involved a shotgun blast to the head at close range); *State v. Hurley*, 876 S.W.2d 57, 69 (Tenn. 1993) (shotgun killing of victim at point-blank range was heinous, atrocious and cruel).

Defendant next claims error in the court's consideration of traditional common law factors beyond the specific aggravating and mitigating factors set forth in the statute. The court reasoned that the Legislature has not "deprived the courts of our common law sentencing authority . . . [or] traditionally recognized sentencing objectives and the requirement that the Court consider those."

■ We find no error in the court's consideration of traditional common law factors such as punishment, deterrence, or rehabilitation. The Legislature has not divested the court of its traditional considerations in sentencing, but has rather provided guidance for a process to consider factors pertaining particularly to the crime committed and the individual convicted of that crime. See 13 V.S.A. § 2303(d).

Lastly, defendant contends that the court erred by failing to "enter written findings of fact, summarizing the offense and the defendant's participation in it . . . [and] specific written findings concerning aggravating and mitigating factors." 13 V.S.A. § 2303(c). We agree that the trial court should have entered its finding in writing, but find that the error was harmless. See V.R.Cr.P. 52(a) (errors that do not affect substantial rights shall be disregarded). In this case the court observed orally that

> [t]he statute requires a finding relating to the Defendant's involvement in the offense . . . . In consideration of the aggravating circumstances and the mitigating circumstance[s], for purposes of movement from the presumptive sentence given by the Legislature, we find and conclude that the aggravating factors established by the evidence substantially outweigh the mitigating factor. We also consider all pertinent sentencing evidence and factors.

■ We find that the court's clear articulation of its findings and conclusions on the record protected defendant's substantive rights. See *State v. Allen*, 145 Vt. 593, 598, 496 A.2d 168, 170-71 (1985) (in

probation revocation hearing, record and transcript enable reviewing court to determine basis of trial court's decision).

*Affirmed.*