## STATE OF Vermont v. Ian FINDLAY

[765 A.2d 483]

No. 99-222

October 31, 2000. Defendant Ian Findlay appeals from his conviction for the sale of marijuana. He alleges that the court erred in (1) limiting the scope of cross-examination of a witness, (2) admitting a photograph into evidence and identification testimony based on that photograph, (3) denying his request for jury instructions on nullification, and (4) denying his motion for acquittal based on insufficiency of the evidence. We reverse and remand for a new trial.

The Brattleboro police arranged a drug buy between defendant and an informant, Paul Roy, that took place on the evening of November 21, 1995.[1] Detective Michael Peterson searched Roy, provided him with $130, and transported him to the parking lot of a local shopping center. From this point, Roy walked toward an adjacent parking lot. Although Peterson lost sight of Roy, Lieutenant Steven Rowell took up observation and watched Roy enter a second parking lot and witnessed a tan car pull into that lot and park near a telephone booth. Roy entered the car and, after a couple of minutes, exited and made his way back to Peterson. As the car left the parking lot, Rowell followed it to where it stopped at a nearby convenience store. When the driver stepped out of the vehicle, Rowell ob-

---

[1] Although there was no explanation as to how or why Roy became an informant initially, the police obtained Roy's cooperation for this particular drug purchase in return for the State's promise not to prosecute him for stealing money with which he had been entrusted for a previous drug buy.

served the driver's face. Meanwhile, Roy returned to Peterson and gave him a bag of marijuana that he had allegedly purchased from defendant. Peterson again searched Roy and found no money or other contraband.

After returning to the police station, Peterson showed Rowell a photograph of defendant that appeared in a 1992 high school yearbook. Rowell positively identified the person in the picture as the driver of the tan car. He based his identification on characteristics such as nose, ears and hair cut. With information and evidence gathered from this November 21 buy, the State charged defendant with selling marijuana in violation of 18 V.S.A. § 4230(b)(2). The State did not call informant Roy as a witness; instead, the prosecution based its case mainly on testimony provided by Detective Peterson. Defendant was convicted and sentenced to three to twenty-four months incarceration, all suspended.

## I.

Defendant argues that the trial court committed reversible error by limiting the scope of his cross-examination of Detective Peterson. Prior to trial, the court excluded, on the State's motion, all evidence regarding other unsuccessful controlled buys involving Roy and arranged by Peterson, including evidence that (1) during a November 8, 1995 sting using Roy to buy drugs from defendant, Roy absconded with $300 in buy money; (2) after the police arrested Roy for stealing the buy money, Roy agreed to cooperate and, on November 21, 1995, again tried to purchase drugs from defendant; and (3) after a third sting targeting defendant, on May 28, 1996, Roy produced what he claimed to be LSD purchased from defendant in exchange for buy money provided by the police, but the alleged contraband was later determined not to be LSD.[2] Defendant had sought to introduce the evidence to demonstrate that Roy had a motive to "set up" the defendant and that Roy had the ability and know-how to manipulate controlled-buy situations.

In excluding the evidence, the court noted that it would have been relevant to Roy's credibility, were he to testify, but that the evidence was not probative of the control under which the November 21 buy took place. Furthermore, the court determined that "the integrity or lack of integrity of the Brattleboro Police Department's procedure for working with undercover informants is essentially not probative at this point and is a waste of the time of the court and the jury." It concluded that generally calling into question the control that the police exercised over Roy in controlled-buy situations would be a distracting issue to the jury.

Under the Sixth Amendment to the United States Constitution and Chapter I, Article 10 of the Vermont Constitution, a "defendant has a right to present exculpatory evidence to aid his defense and to confront witnesses brought against him," where the evidence is relevant and admissible under the rules of evidence. *State v. Corliss*, 168 Vt. 333, 337, 721 A.2d 438, 441 (1998). This right is not absolute, and evidence may be excluded when it is irrelevant, see V.R.E. 402, or when its probative value is substantially outweighed by its potential for confusing the issues, misleading the jury, or unfairly prejudicing the State's case. See V.R.E. 403. The trial court's resolution of evidentiary issues is discretionary, and we will not reverse them absent an abuse of discretion. See *Corliss*, 168 Vt. at 337, 721

---

[2]The court also excluded testimony from another witness that Roy had manipulated the May 28 buy in order to obtain money to pay his rent. Defendant does not appeal that ruling.

A.2d at 442; *State v. Cartee*, 161 Vt. 73, 75, 632 A.2d 1108, 1110 (1993). As we noted in *Cartee*, however, a trial court's discretion may be limited by constitutional protections afforded a defendant. 161 Vt. at 76, 632 A.2d at 1111.

In *Cartee*, where defendant was accused of sexually assaulting a sixteen-year-old boy, we held that the trial court erred in restricting defendant's cross-examination of the complainant. The court in that case did not allow defendant to inquire about the possibility that complainant was motivated to fabricate the charges in order to protect his stepfather, who had been implicated by defendant in committing insurance fraud. The court reasoned that defendant's offer of proof was mere speculation and, even if there existed some probative value in the evidence contained in the offer, it was outweighed by the countervailing factors enumerated in V.R.E. 403. We reversed, finding that, in light of defendant's right to confrontation, the court both abused its discretion and committed reversible error because the complainant's testimony played a critical role in the State's case and his credibility was a "pivotal issue bearing on defendant's guilt." *Cartee*, 161 Vt. at 77, 632 A.2d at 1111.

Here, similar to the situation in *Cartee*, Roy's role as an informant in the November 21 transaction and the control the police exercised over Roy in the transaction, as elicited through Peterson's testimony, were pivotal factors bearing on defendant's guilt. Thus, rather than being simply a distracting issue, the overall picture of Roy's relationship with the police, the circumstances surrounding his cooperation, and the facts relevant to his role as an informant were highly probative of the integrity of the November 21 buy. Without evidence of Roy's actions in drug purchases both prior to and after November 21, the jury was left without the benefit of a reasonably complete understanding of the November 21 operation as presented by Peterson; thus, cross-examination was significantly undermined.

The error was not harmless. Because Roy himself did not testify at trial, the State's case was based solely on the following circumstantial evidence: prior to the transaction, Roy was searched and Peterson found no contraband; Roy was then given money; he entered a car driven by an individual identified by Officer Rowell as defendant; Roy exited the car and returned to Peterson; he then gave a bag to Peterson containing what was later identified as marijuana; Peterson again searched Roy and found no money. The strength of the inference to be drawn from this evidence, i.e., that Roy exchanged the money for marijuana while in the automobile, is dependent on the degree to which the transaction and Roy's activities in the course of it were controlled by the police.

If the court had allowed defendant to cross-examine Peterson about Roy's manipulation or potential manipulation of other buys, he may have created a reasonable doubt in the minds of the jury about the November 21 transaction that, in turn, might reasonably have resulted in his acquittal. The State concedes that Peterson lost sight of Roy momentarily during the November 21 buy. Assuming that it can be shown by admissible evidence, Roy's deftness and apparent willingness to manipulate his relationship with defendant for monetary gain coupled with the less-than-airtight supervision of the November 21 operation leave room to doubt that Roy did in fact purchase marijuana from defendant on that date. Therefore, the court erred in excluding this evidence and defendant is entitled to a new trial. We address defendant's remaining claims because the issues raised may recur on remand.

II.

Defendant next contends that the court erred in allowing into evidence both

Rowell's pretrial identification of him and the yearbook photograph upon which that identification was made. He argues that the pretrial identification was impermissibly suggestive, thus violating his right to due process, and that the State failed to lay a proper foundation for admission of the photograph. We disagree.

On the same night as the November 21 operation, Peterson showed Rowell a high school yearbook and pointed to defendant's photograph. Rowell then positively identified defendant as the driver of the tan car into which Roy had entered. The suggestiveness of this single photograph identification is obvious. See *State v. Smith*, 140 Vt. 247, 253, 437 A.2d 1093, 1095 (1981) ("The practice of one-to-one showups 'has been widely condemned.'") (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)); *State v. Kasper*, 137 Vt. 184, 192, 404 A.2d 85, 90 (1979) (suggestiveness of including two photographs of defendant in photo array was patent). A suggestive pretrial identification procedure, however, does not necessarily violate a defendant's right to due process. See *id.* at 192, 404 A.2d at 90. The admission of identification testimony predicated upon a "'suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability.'" *State v. Baxter*, 145 Vt. 295, 297, 487 A.2d 163, 164 (1984) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977)). Reliability is determined by looking at five factors: (1) the opportunity the witness had to view the defendant at the time of the crime, (2) the degree of attention paid to the witness, (3) the accuracy of the description, (4) the level of certainty demonstrated at the time of the show-up, and (5) the time elapsed between the crime and the show-up. See *id.* (quoting *Manson*, 432 U.S. at 114).

We find Rowell's identification sufficiently reliable. First, Rowell had an opportunity to witness defendant as he exited his car after stopping at the convenience store, and had a clear look at his face. Second, Rowell is a trained police officer who knew that he would be identifying defendant; therefore, it is assumed that he paid a high degree of attention to defendant. In *Manson*, the Court recognized that a trained police officer "could be expected to pay scrupulous attention to detail" when observing a suspect. 432 U.S. at 115. Other courts have weighed this prong in favor of reliability when the identification was made by a police officer. See, e.g., *United States v. Williams*, 999 F. Supp. 412, 415 (W.D.N.Y. 1998), *aff'd*, *United States v. Lumpkin*, 192 F.3d 280 (2d Cir. 1999); *State v. Smith*, 516 S.E.2d 902, 906 (N.C. Ct. App. 1999); *State v. Abdo*, 518 N.W.2d 223, 226 (S.D. 1994). Third, Rowell testified to the high level of certainty with which he made the identification, explaining that the body characteristics such as nose, ears, and haircut of the person depicted in the photograph matched those of the driver of the tan car. Finally, Rowell made the identification within hours of the November 21 buy, it having occurred on the same evening of the operation. Under these circumstances, although Rowell's pretrial identification of defendant was based on a suggestive procedure, we find the identification sufficiently reliable. Cf. *Neil v. Biggers*, 409 U.S. 188, 200-01 (1972) (permitting eyewitness testimony where initial identification occurred seven months after crime and was prompted by suggestive pretrial showup); *State v. Savo*, 141 Vt. 203, 212-13, 446 A.2d 786, 791 (1982) (permitting in-court identification by victim of robbery where pretrial identification occurred two days after crime); *Kasper*, 137 Vt. at 192-93, 404 A.2d at 90-91 (permitting eyewitness testimony preceded by suggestive and unnecessary pretrial identification of robber, who had worn nylon stocking mask, that occurred more than one month after robbery).

The court, moreover, did not abuse its discretion in admitting the yearbook pho-

tograph. The admissibility of photographic evidence is largely a matter of discretion for the trial court. See *State v. Colby*, 139 Vt. 475, 478, 431 A.2d 462, 464 (1981). "The test of admissibility is that the photographs . . . are a fair and accurate representation of their subject." *State v. Howe*, 136 Vt. 53, 66, 386 A.2d 1125, 1132 (1978).

Here, the court admitted a photograph printed in a 1992 Brattleboro Union High School yearbook, under which defendant's name appeared. Peterson testified that he had observed defendant prior to the November 21 buy, knew who he was, and had the ability to recognize him. Peterson, furthermore, testified that the yearbook photograph was a fair and accurate depiction of defendant. In light of these circumstances, and without any countervailing testimony that the photograph is not one of defendant nor an accurate depiction of him, we find that the photograph was properly authenticated and that the court did not abuse its discretion by admitting it. Cf. *id.* at 66, 386 A.2d at 1132 (transparency of victim's body made from film shot by state pathologist properly admitted into evidence where pathologist testified that transparency was accurate representation of its subject and there was no countervailing testimony); *State v. Acker*, No. L-89-238, 1990 WL 152141, at *2 (Ohio Ct. App. Oct. 12, 1990) (yearbook photograph of defendant properly authenticated and admitted into evidence where defendant's mother testified that photograph "was a picture of [defendant]").

### III.

Next, defendant contends that the court erred in failing to instruct the jury, as he requested, on its inherent right to acquit or nullify. Defendant recognizes, nevertheless, that juries do not have the power to decide questions of law in Vermont. See *State v. Burpee*, 65 Vt. 1, 25 A. 964 (1892) (overruling *State v. Croteau*, 23

Vt. 14 (1849)). In *Burpee*, we acknowledged that:

> [J]urors cannot be called to account for their verdict. This, however, is far from saying that it is their legal province to override the law laid down by the court, and to declare it for themselves.
>
> We think such a rule contrary to the fundamental maxims of the common law, and to adjudged cases in England and the uniform practice of its highest courts.

*Burpee*, 65 Vt. at 16, 25 A. at 968. This is the perspective shared by every federal jurisdiction and by almost every state jurisdiction. See N. Marder, *The Interplay of Race and False Claims of Jury Nullification*, 32 U. Mich. J. L. Reform 285, 310 n.116 (1999). As a result, the common view is that courts "refuse[] to instruct the jury of its right to decide questions of law; in other words, the right to acquit against the weight of evidence." D. Brody, *Sparf and Dougherty Revisited: Why the Court Should Instruct the Jury of Its Nullification Right*, 33 Am. Crim. L. Rev. 89, 102 (1995). Defendant offers no persuasive basis for rejecting the majority rule, and we decline to do so.

### IV.

Finally, defendant seeks acquittal for lack of sufficient evidence to support his conviction. He highlights the fact that the officers never witnessed him exchange marijuana for money with Roy. The State's evidence, argues defendant, merely gives rise to a suspicion of guilt that is dependent upon conjecture, which is insufficient to sustain his conviction.

"The standard of review for denial of a V.R.Cr.P. 29 motion for judgment of acquittal is whether the evidence, when viewed in the light most favorable to the

State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Delisle,* 162 Vt. 293, 307, 648 A.2d 632, 641 (1994) (internal quotation marks and alterations omitted). While it is true that evidence leaving a determination of guilt wholly dependent upon conjecture is insufficient, circumstantial evidence may serve as proof of guilt beyond a reasonable doubt. See *State v. Durenleau,* 163 Vt. 8, 12, 652 A.2d 981, 983 (1994). Here, we find that the State's circumstantial evidence may fairly convince a reasonable trier of fact that defendant sold marijuana. Whether the jury will in fact be so convinced in defendant's second trial remains to be seen.

*Reversed and remanded for a new trial.*