2004 VT 103

# State of Vermont v. Vito Russo

[864 A.2d 655]

No. 03-348

Present: Amestoy, C.J.,[1] Dooley, Johnson, Skoglund and Reiber, JJ.

Opinion Filed October 8, 2004
Motion for Reargument Denied October 26, 2004

---

[1] Chief Justice Amestoy sat for oral argument but did not participate in this decision.

*Dan M. Davis*, Windham County State's Attorney, and *Scott A. Willison*, Deputy State's Attorney, Brattleboro, and *Jane Woodruff*, Executive Director, State's Attorneys' and Sheriffs' Department, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Henry Hinton*, Appellate Defender, Montpelier, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant, Vito Russo, was convicted by a jury of aggravated assault, unlawful trespass, driving under the influence of intoxicating liquor, driving with license suspended and four violations of conditions of release. He received a sentence of twenty-one years to serve. He appeals both his conviction for aggravated assault[2] and his combined sentence claiming that: (1) the evidence does not support his conviction; (2) the trial judge wrongfully limited testimony from the sole defense witness; (3) the trial judge failed to charge simple assault and reckless endangerment as either lesser-included or lesser-related offenses; (4) the twenty-one year sentence was based on a presentence investigation (PSI) report containing a psychological evaluation conducted by a nonexpert who was unavailable for cross-examination; and

---

[2] His notice of appeal includes the convictions for aggravated assault, unlawful trespass, DUI and DLS, but his arguments on appeal go solely to the conviction for aggravated assault. His arguments related to the sentence theoretically relate to all components of the aggregate sentence for all the offenses.

(5) trial counsel was ineffective.[3] Having considered those issues preserved for appeal, we affirm the conviction.

¶ 2. In addition to the claims considered in this appeal, defendant, in his pro se brief, raises ten other arguments, not properly preserved for appeal. Defendant alleges that: (1) the rifle found in his car was the fruit of an illegal search; (2) the trial court allowed the State's witnesses to testify based upon hearsay and speculation; (3) limitations on the scope of cross-examination violated defendant's right to confront the State's witnesses; (4) the prosecutor's friendship with the victim and involvement in an ongoing civil case where both the victim and defendant were parties constituted prosecutorial misconduct; (5) the random elimination of two nondesignated alternate jurors constituted jury tampering; (6) key pieces of evidence were kept from the jury during deliberation; (7) the State failed to disclose the PSI report to defendant in a timely manner; (8) the State misrepresented and misapplied defendant's criminal record during sentencing; (9) no defense was permitted during sentencing; and (10) the jury was given an incorrect instruction regarding intent and voluntary intoxication. The record shows that none of these claims was preserved during proceedings in the trial court; issues not raised during trial cannot subsequently be raised on appeal. *State v. Pelican*, 160 Vt. 536, 538, 632 A.2d 24, 25-26 (1993).[4] Accordingly, we do not consider these arguments, and now turn to the facts of the case.

¶ 3. In 1999, defendant purchased the Unique Motel and Gift Shop from John McKay under a payment plan where McKay retained the deed until defendant paid for the property in full. The two were close friends until a dispute arose regarding defendant's monthly payments. McKay foreclosed on the property, and defendant's family was subsequently evicted from the motel. On November 17, 2002, in the late afternoon, following the eviction, defendant visited McKay with the intent to offer him $5000 for permission to reside in the motel with defendant's family through the holidays. According to McKay's testimony, he immediately demanded that defendant leave his property,

---

[3] Some of these issues were raised by counsel for defendant, others by defendant in a pro se brief. The unpreserved arguments that follow in the text were all raised in defendant's pro se brief.

[4] Although defendant does not request that we do so, we can review unpreserved errors for plain error — that is "'error so grave and serious that it strikes at the very heart of the defendant's constitutional rights.'" *Pelican*, 160 Vt. at 538, 632 A.2d at 26 (quoting *State v. Hoadley*, 147 Vt. 49, 53, 512 A.2d 879, 881 (1986)). Our review of defendant's alleged errors indicates that if any are errors, they do not rise to the level of plain errors.

and defendant responded by pointing a gun at him. McKay then fled in his plow truck, pursued by defendant in his standard transmission Dodge Colt. Defendant fired four shots in McKay's direction, while the two vehicles dodged in and out of traffic, passing residences, businesses and the state police barracks. The chase continued for five miles, until McKay pulled into the Brattleboro Police Station, followed by defendant, who was arrested by officers on the scene.

¶ 4. After a jury trial, defendant was convicted of repeatedly firing the rifle at McKay while driving his vehicle under the influence of alcohol. Although defendant maintained his innocence throughout the trial, defense counsel's main argument was that defendant lacked the capacity to form intent due to intoxication and diminished mental state resulting from the eviction and his family's financial problems. Defendant's fiancée, whom he has since married, was the defense's only witness. She testified that on November 17, 2002, prior to visiting McKay, defendant was drunk, walking in circles and mumbling to himself. To make its case, the State presented McKay's testimony, testimony of two of McKay's tenants who claimed to have heard gun shots fired, testimony of the police officers who interviewed McKay and arrested defendant, the bolt-action rifle found in defendant's car, and four empty shell casings.

¶ 5. After he was convicted, defendant was sentenced by the superior court judge to fifteen to twenty-one years to serve on the multiple convictions.[5] During the sentencing hearing, the State presented a PSI report containing a psychiatric evaluation. Defendant argued then, and reiterates during this appeal, that the evaluation was prepared by a nonexpert who was not available for cross-examination. The judge initially ruled that it was defense counsel's obligation to subpoena the evaluator, but ultimately decided not to rely on the evaluation. Other factors contributing to defendant's twenty-one year sentence included prior offenses and that the incident occurred while defendant was subject to a court order forbidding any contact with McKay.

¶ 6. Defendant first contends that his conviction is against the weight of the evidence and the trial judge should have directed a judgment of acquittal. Defendant argued at trial, as he does here, that

---

[5] The main part of the sentence was twelve to fifteen years for the aggravated assault. For the DUI and DLS convictions, the court added consecutive sentences of one to two years for each offense. For each of the four violation of condition of release convictions, the court added a consecutive sentence of three to six months to serve.

the conduct for which he was convicted was physically impossible. He asks us, in this appeal, to consider whether it is possible for him to fire a bolt-action rifle multiple times while driving a standard transmission vehicle, given that both tasks require the use of two hands. Additionally, defendant points out that the State's case lacks the plethora of witnesses that one would expect when shots are fired on a public road in a prolonged car chase during the late afternoon, passing residences, businesses and the state police barracks.

¶ 7. The jury was in the best position to determine whether the alleged conduct was physically possible and whether the alleged events took place. This Court does not substitute its own findings of fact for those of the jury. See *State v. Turner*, 2003 VT 73, ¶ 7, 175 Vt. 595, 830 A.2d 122 (mem.) (noting that acquittal is only proper if there is no evidence to substantiate a jury verdict); *State v. Couture*, 169 Vt. 222, 226, 734 A.2d 524, 527 (1999). We will grant a judgment of acquittal only where no reasonable juror could have found defendant guilty beyond a reasonable doubt if the evidence is viewed in the light most favorable to the State. *Turner*, 2003 VT 73, ¶ 7; *Couture*, 169 Vt. at 226, 734 A.2d at 527. We cannot conclude that defendant has demonstrated that the charged conduct was impossible. Here, a reasonable juror could have based the conviction on the testimony of McKay and other witnesses, as well as circumstantial physical evidence.

¶ 8. In addition to claiming the impossibility of the events for which he was convicted, defendant argues that the State did not introduce sufficient evidence of his specific intent to harm McKay and that the only evidence regarding specific intent was put forth by the defense. It is common, however, that the mental element of an offense must be inferred from the defendant's conduct. See *State v. Alexander*, 173 Vt. 376, 385, 795 A.2d 1248, 1255 (2002) (using the same facts to prove kidnapping act and intent). The State's evidence that defendant assaulted McKay is sufficient for a jury to infer that the assault was intentional. Allowing the State to use circumstantial evidence to prove intent does not, as defendant argues, relieve the State of its burden to prove each element of the crime. See *State v. Findlay*, 171 Vt. 594, 599, 765 A.2d 483, 489 (2000) (mem.). The jury was properly instructed on the State's burden to prove beyond a reasonable doubt that defendant specifically intended to assault McKay. The jury considered defendant's claim that due to his mental state he could not form specific intent to harm McKay and nonetheless chose to convict.

¶ 9. In a related argument, defendant contends that the trial judge prevented him from demonstrating his lack of specific intent by limiting the scope of his wife's testimony, the only defense witness. She was not permitted to testify that defendant's mother had lost her life savings as a result of the dispute between defendant and McKay or that her family was homeless and had applied for public assistance. Defendant also argues that the court's evidentiary rulings prevented the witness from describing any of the events leading up to the incident on November 17.

¶ 10. This issue has changed somewhat between its presentation to the trial court and its presentation here. The evidentiary issues began to arise when defense counsel wanted to show that defendant's mother had contributed substantial amounts of money and had lost it in the foreclosure, and so asked the witness who had made the down payment on the motel. After objection from the prosecution, defense counsel argued that the evidence went to defendant's mental state on the day of the incident. The court inquired about the mental state rationale because defendant had not given notice of an insanity defense. The court explained:

> [T]he only defense I've heard about is this diminished capac-ity, which is related to alcohol consumption. So, his mental state at the time of the offense, if it . . . I mean, what are you trying to show with his mental state if it's not to show he shouldn't be responsible because he was so upset he couldn't form the intent which then becomes an insanity defense[?]

Defense counsel responded that defendant "was so upset that he began drinking and he worried about everything, losing everything, his mother losing everything, that contributed to the drinking." The court responded that testimony about the mother contributing to the cost of the motel was not relevant, but that defense counsel could inquire about the foreclosure. The court added that evidence "that he was upset and started drinking is relevant, . . . but not this other information about him being upset to the level of not forming an intent to commit the crime." Defense counsel again tried to argue that the receipt of welfare would show why defendant was drinking, and the court answered that the reason he was drinking was irrelevant and "would serve . . . to prejudice the jury."

¶ 11. The witness described defendant as going from a "strong man" to a "low man" after three years of battling over the motel. She

described in detail defendant's intoxication on the date of the offense and his related behavior. She testified that he was not himself and was incoherent.

¶ 12. Although we have a broad rule of relevancy, see V.R.E. 401, the trial judge has discretion in making a relevancy ruling and will not be overturned absent abuse of that discretion. *State v. Larose*, 150 Vt. 363, 371, 554 A.2d 227, 232-33 (1988). Moreover, relevant evidence can be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or needless presentation of cumulative evidence. V.R.E. 403. Again, a ruling based on Rule 403 is discretionary. *State v. Griswold*, 172 Vt. 443, 448, 782 A.2d 1144, 1148 (2001).

¶ 13. Defendant argues that the excluded evidence went to whether defendant had the intent to commit the crime and was acting under diminished capacity, emphasizing that alcohol consumption represented only one aspect of defendant's argument that he lacked the requisite intent. In response to the prosecution's objection, however, defense counsel was required to make an offer of proof and state the ground on which it was admissible. See V.R.E. 103(a)(2); *State v. Ringler*, 153 Vt. 375, 378, 571 A.2d 668, 670 (1989). The offer went solely to defendant's intoxication and the diminished capacity defense based on intoxication. Defense counsel did not articulate other factors, not based on intoxication, that he now argues in this appeal. The court allowed defense counsel to elicit from the witness the evidence in support of the alcohol-based diminished capacity defense.

¶ 14. We also emphasize the court's discretion in ensuring the evidence was before the jury for a proper purpose. By the reference to prejudicing the jury, the court was apparently concerned that the proffered evidence went more to the dispute between defendant and McKay, and sought to put defendant in a sympathetic light while creating hostility for McKay. The court had discretion to prevent this misuse of the evidence by limiting testimony of marginal relevance that did not undercut the diminished capacity defense. We find no error in the evidentiary rulings.

¶ 15. Next, defendant challenges the jury instructions, specifically the trial judge's refusal to charge simple assault and reckless endangerment as lesser-included offenses. A criminal defendant is entitled to have the jury instructed on every offense that is composed solely of some of the same elements as the offense charged and is supported by the evidence. *Alexander*, 173 Vt. at 382, 795 A.2d at 1253; *State v. Delisle*, 162 Vt. 293, 301, 648 A.2d 632, 637 (1994). A defendant benefits

from such an instruction "because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." *Beck v. Alabama*, 447 U.S. 625, 633 (1980). According to defendant, given the option to do so, the jury would have chosen to convict him of a lesser offense, involving only general intent, because the evidence did not support a finding that he had the specific intent to injure McKay.

¶ 16. Although a criminal defendant is entitled to a charge on every lesser-included offense supported by the facts in evidence, simple assault and reckless endangerment are not, given these facts, lesser-included offenses of aggravated assault. Defendant was charged with aggravated assault under 13 V.S.A. § 1024(a)(2): "A person is guilty of aggravated assault if he attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon." Defense counsel apparently first suggested that simple assault under 13 V.S.A. § 1023(a)(1) should be charged as the lesser-included offense. The language of this subsection mirrors the aggravated assault definition without the requirement of deadly weapon use. It is different from a completed assault because the simple assault statute contains a lesser mental element than the aggravated assault statute. See *State v. Bolio*, 159 Vt. 250, 252, 617 A.2d 885, 886 (1992) (noting that simple assault includes reckless conduct, whereas aggravated assault is an intentional conduct offense). Because the only difference in the offenses involves whether a deadly weapon was used, and there is no evidence in this case of an assault without a deadly weapon, the trial judge properly held that the jury could not convict defendant of simple assault without convicting him of aggravated assault. In these circumstances, the lesser-included offense instruction is inappropriate. See *Alexander*, 173 Vt. at 383-84, 795 A.2d at 1254; *State v. Mercado*, 166 Vt. 632, 632-33, 699 A.2d 50, 50 (1997) (mem.).

¶ 17. In response, defense counsel switched to a request that the court charge that simple assault under the alternative language of 13 V.S.A. § 1023(a)(3) was the proper lesser-included offense. That section reads: "A person is guilty of simple assault if he attempts by physical menace to put another in fear of imminent serious bodily injury." An offense is lesser to a greater offense only if it has no elements that are not necessary to conviction for the greater offense. *State v. Williams*, 154 Vt. 76, 82, 574 A.2d 1264, 1267 (1990). Defendant's reliance on the alternative elements of the simple assault statute run afoul of this

language. Under this alternative, the prosecution must prove that defendant attempted to put the victim "in fear of imminent serious bodily injury." The aggravated assault statute does not contain this element. Accordingly, the court properly held that defendant was not entitled to a lesser-included offense instruction under this part of the simple assault statute.

¶ 18. Defendant fares no better in his argument that reckless endangerment is a lesser-included offense of aggravated assault. Although under the facts in evidence the State could have charged defendant with reckless endangerment, the offense of reckless endangerment is not composed of elements from the offense of aggravated assault. It is defined as follows:

> A person who recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury shall be imprisoned for not more than one year or fined no more than $1,000.00 or both. Recklessness and danger shall be presumed where a person knowingly points a firearm at or in the direction of another, whether or not the actor believed the firearm to be loaded, and whether or not the firearm actually was loaded.

13 V.S.A. § 1025. Thus, defendant was not entitled to a lesser-included offense instruction on reckless endangerment.

¶ 19. Defendant has shifted his argument here to the position that simple assault and reckless endangerment should have been submitted to the jury as lesser-related offenses. He argues that the issue was preserved because, although defense counsel labeled these offenses as lesser-included, the issue was fairly presented to the trial court. In making his argument, defendant relies upon *State v. Corliss*, 168 Vt. 333, 339, 721 A.2d 438, 443 (1998), where the defendant also argued that we should require lesser-related offenses. Without totally rejecting recognition of lesser-related offenses in appropriate cases, we held in *Corliss* that defendant would not be entitled to a lesser-related offense instruction on the facts of that case. 168 Vt. at 340, 721 A.2d at 443. Defendant argues that this case is particularly appropriate for a lesser-related offense instruction, as demonstrated by a jury question that showed they wanted to convict defendant of only a lesser offense. We agree that if we recognized an obligation to charge lesser-related offenses, this case would be an appropriate candidate for such an instruction. We hold that the trial court has no obligation to instruct

on lesser offenses that are only related to the offense charged by the prosecution.

¶ 20. In *Corliss*, we employed the definition of a lesser-related offense from *People v. Geiger*, 674 P.2d 1303, 1304 (Cal. 1984) (overruled by *People v. Birks*, 960 P.2d 1073 (Cal. 1998)): a lesser-related offense is any offense where "the lesser offense is closely related to that charged, there is evidence of its commission, and defendant's theory of defense is consistent with such a finding." *Corliss*, 168 Vt. at 339-40, 721 A.2d at 443. We noted in *Corliss* that only a relatively small number of jurisdictions had recognized an obligation to charge lesser-related offenses, and the doctrine had been rejected for the federal system by the U.S. Supreme Court decision in *Schmuck v. United States*, 489 U.S. 705, 716 (1989). See 168 Vt. at 339 n.4, 721 A.2d at 443 n.4. We find the latter decision particularly important because it interprets Federal Rule of Criminal Procedure 31(c) and we have adopted an identical version of that rule as V.R.Cr.P. 31(c).

¶ 21. Rule 31(c) provides:

> (c) Conviction of Lesser Offense. The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

As we observed above, the rule language is taken verbatim from the federal rule and codifies the preexisting law. See Reporter's Notes, V.R.Cr.P. 31. The rule is interpreted to require a comparison of statutory elements to determine whether a lesser offense will be charged, so that any element in the lesser offense not contained in the greater offense defeats the obligation to instruct the jury on the lesser offense. See *In re Nash*, 149 Vt. 63, 66, 539 A.2d 989, 991 (1987); *State v. Bourn*, 139 Vt. 14, 15-16, 421 A.2d 1281, 1282 (1980). That is exactly the holding of *Schmuck*, 489 U.S. at 716-17.

¶ 22. That decision adds two policy reasons why the elements comparison test is the most appropriate. First, it enables mutuality of access to instructions between the defense and prosecution. *Id.* at 718. Since the lesser-related offense has elements outside those charged in the information, neither the prosecution nor the court can impose such an instruction on the defendant without his or her consent. *Id.* On the other hand, if lesser-related offense instructions were available, the

defendant could insist on such an instruction when it appeared to be tactically beneficial and waive any notice defect. *Id.*

¶ 23. Second, the elements comparison test is predictable and easy to administer, whereas recognition of lesser offenses is neither. *Id.* at 720-21. This consideration was particularly significant in persuading the California court to overrule *Geiger* unanimously and reject the obligation to instruct the jury on lesser-related offenses. *Birks* noted that the result of *Geiger* has been that "the courts are cast adrift in a trackless sea" because "no clear standards" had emerged to determine when a lesser offense is sufficiently related. *Birks*, 960 P.2d at 1087. Justice Mosk, who joined the *Geiger* opinion, concurred in overruling it because "[w]ith the experience of more than a decade, I believe that the rule of *Geiger* has proved to be unworkable." *Id.* at 1092.

¶ 24. We recognize defendant's argument that the elements comparison test results in a miscarriage of justice where a lesser charge exists to fit the scenario, but does not contain exactly the same elements as the offense charged. We also recognize that there are countervailing policy considerations, as explained fully in *Birks*. Without fully resolving the policy arguments, we conclude, however, that in light of the clear language of Rule 31(c), and the difficulties in defining when lesser-related offense instructions are proper, change of policy in this area, if any, should come from rule-making or legislative action. We decline to impose on trial courts any obligation to go beyond the charging of lesser-included offenses as determined under the traditional elements comparison test.

¶ 25. Defendant next questions the validity of his sentence. He claims that the twenty-one year sentence was based on a PSI report containing a psychiatric evaluation conducted by a nonexpert who was unavailable for cross-examination. Defendant argued at the sentencing hearing that the PSI report should be rejected because the evaluator was absent or, alternatively, the hearing should be rescheduled to include the evaluator. The judge denied both requests, ruling that defense counsel was responsible for ensuring the presence of the evaluator at the sentencing hearing. Regardless of who should have called the witness, it is undisputed that defendant had only a limited opportunity to rebut the psychiatric evaluation.

¶ 26. Our rules provide for the disclosure of, and opportunity to rebut, information considered at sentencing. V.R.Cr.P. 32(c)(3), (4). When defendant challenges sentencing information, the court can respond by agreeing not to consider the information. V.R.Cr.P. 32(c)(4). In such a case, the point becomes "moot." Reporter's Notes to

1989 Amendment, V.R.Cr.P. 32; see *State v. Rathburn*, 140 Vt. 382, 388, 442 A.2d 452, 455 (1981) (claim that hearsay evidence used for sentencing was invalid based on the lack of opportunity for rebuttal is answered where the sentencing judge agreed not to rely on the contested material). Although the trial judge ruled that defendant was responsible for not having the evaluator at the sentencing hearing, she also indicated that she would not consider the evaluation report. As a result, any error in the court's decision was harmless.

¶ 27. Finally, defendant claims that trial counsel was ineffective for failing to: (1) conduct the factual investigation necessary to demonstrate that no automobile chase occurred and that no shots were fired; (2) subpoena the psychiatric evaluator to be present at the sentencing hearing; and (3) preserve meritorious claims for appeal. This Court is not, however, the appropriate forum to determine in the first instance whether defendant received ineffective assistance of counsel. Unless the question of effective representation of counsel is raised at trial and ruled on by the trial court, defendant must initiate a claim of ineffective assistance of counsel by post-conviction relief. See *State v. Lund*, 168 Vt. 102, 105, 718 A.2d 413, 415 (1998); *State v. Bacon*, 163 Vt. 279, 296-97, 658 A.2d 54, 66 (1995). Although defendant raised the issue of ineffective assistance of counsel at his sentencing hearing, the court never examined or ruled on it because defendant withdrew his claim. Accordingly, any claim of ineffective assistance of counsel must be raised in a petition for post-conviction relief, rather than on direct appeal.

*Affirmed.*