# State of Vermont v. Timothy Gilman

[608 A.2d 660]

No. 90-051

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 27, 1992

*Robert M. Butterfield,* Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Robert Katims* and *David Venman,* Law Clerk (On the Brief), of *Martin & Paolini,* Barre, for Defendant-Appellant.

**Gibson, J.** Defendant Timothy Gilman appeals his conviction for assault and robbery, 13 V.S.A. § 608(a), (c), and burglary, 13 V.S.A. § 1201(a). He argues that the district court erred in refusing to suppress his confession and in rejecting his attempt to offer certain exculpatory evidence. He also argues that the State's failure to charge specific acts violated his right to a unanimous jury verdict. We affirm.

In the course of a domestic dispute on the morning of March 24, 1989, defendant followed his girlfriend to the state police barracks in St. Johnsbury. After police officers separated defendant from his girlfriend, defendant volunteered that he had information about welfare fraud and drug crime. The officers expressed interest, but told him he was free to go and that he was under no obligation to talk with them. Defendant stayed. He was agitated but grew more calm as his visit continued.

He and the officers discussed the possibility that he might become a confidential informant. The officers told defendant he could be reimbursed for expenses and that he might be entitled to a percentage of any proceeds gained from the sale of property under the federal drug forfeiture law. The officers also told

him he would not be prosecuted for having grown marijuana in the median strip of the interstate highway, and that they would not reveal to suspects that he had provided them with incriminating information. The officer in charge of drug investigations then asked defendant a few questions to test his veracity. Believing that a brother of defendant had been involved in the unsolved burglary and assault for which defendant now stands convicted, the officer asked defendant about his brother's involvement in those offenses. Defendant responded, "We did that."

The officer in charge of investigating the burglary and assault then entered the discussion. Defendant agreed to discuss the crime, and the officer read him his *Miranda* rights, which defendant waived in writing. Prompted by the officer, defendant described the crime: at about 10 p.m. on June 19, 1983, defendant's girlfriend dropped him and his two younger brothers off near the home of Alfred Smith and Harriet Masure in Lyndonville. Defendant had heard that Smith had a safe, and he and his brothers intended to force Smith to open it and give them its contents. The three brothers entered the home with their faces masked and found Masure watching television while Smith dozed. The brothers demanded that Smith open the safe, but he refused and grabbed a hammer. In the ensuing struggle, the brothers beat Smith, inflicting severe facial injuries. Nonetheless, Smith continued to refuse to open the safe, and the brothers shut him and Masure in a bathroom. Smith escaped through a window, but the brothers left the home empty-handed before help could arrive.

I.

Defendant moved to suppress his confession on grounds that he had been irrational at the time and had been led to believe he would not face prosecution or would be treated leniently for any conduct he described to police. At a hearing on the motion, defendant and three police officers testified about their conversations at the barracks. The court denied defendant's motion, finding that defendant was motivated by a desire to "get it off his chest." The court found no connection between the confession and any promises concerning the possibility of defendant becoming a confidential informant.

■■ The Fifth and Fourteenth Amendments to the United States Constitution and Chapter I, Article 10 of the Vermont Constitution* prohibit the introduction of an involuntary confession into evidence. See *State v. Badger*, 141 Vt. 430, 438, 450, 450 A.2d 336, 341, 347–48 (1982). Whether a confession is involuntary is determined by examining the totality of the circumstances. *State v. Stanislaw*, 153 Vt. 517, 532, 573 A.2d 286, 295 (1990). The ultimate question is whether police officers' threats, promises or coercion were sufficient to overcome the defendant's free will or rational intellect, causing the defendant to confess. *Id.* A trial court's findings in support of its decision to suppress or admit a confession must stand if they are supported by substantial credible evidence. *Id.*

In the present case, the testimony at the suppression hearing showed that defendant arrived at the state police barracks uninvited. He initiated a discussion about crime. He was told he was free to leave. The officers discussed the implications of his becoming a confidential informant, but never promised that he would not be prosecuted if he admitted having committed a serious felony unrelated to the subject of their discussion, drug crime. Whatever defendant may have thought, the evidence does not suggest that his confession was the result of police pressure.

■ The court's findings are supported by substantial credible evidence, and the findings support the court's refusal to suppress the confession. There was no error.

## II.

Defendant next argues the court erred in excluding evidence of Mr. Smith's relationship with a Mr. Camber. On cross-examination, Mr. Smith conceded that shortly before the crime he had filed a suit against Mr. Camber for assaulting him a year or two earlier. The State objected and asked that no further testimony concerning Mr. Camber be allowed. In his offer of proof,

---

* Each of defendant's arguments involves Article 10. It reads in pertinent part:

 [I]n all prosecutions for criminal offenses, a person hath a right ... to call for evidence in his favor, and a speedy public trial by an impartial jury of the country; without the unanimous consent of which jury, he cannot be found guilty; nor can he be compelled to give evidence against himself ....

defendant stated that three to five days after the crime Mr. Camber had told two police officers he knew who was involved and where weapons had been thrown. Defendant argued that evidence about Mr. Camber was relevant to exculpate defendant because Mr. Camber had a motive and knowledge sufficient to indicate he might have been a participant. Defendant planned to call Mr. Camber and, if necessary, impeach him with his statements to the police officers.

Questioned by the court, defendant conceded that Mr. Camber had not implicated himself directly and subsequently had denied knowledge and refused to discuss the crime. The State argued that any testimony about Mr. Camber would raise only speculation because there was no evidence that anyone other than the Gilman brothers was involved. The court concluded the issue was "extrinsic," and barred defendant from inquiring further about Mr. Camber.

Defendant argues the court's ruling violated his right to present exculpatory evidence under Chapter I, Article 10 of the Vermont Constitution and the Sixth Amendment to the United States Constitution. A defendant is entitled to call witnesses and present evidence on his behalf, but the evidence must be otherwise admissible. *State v. Kelly*, 131 Vt. 582, 588, 312 A.2d 906, 909 (1973); see also *State v. Kennison*, 149 Vt. 643, 650–51, 546 A.2d 190, 195 (1987) (evidence that third party may have committed crime was too attenuated to be admitted). The court may exclude evidence when the danger of unfair prejudice or confusion substantially outweighs its probative value. V.R.E. 403; *State v. Larose*, 150 Vt. 363, 368, 554 A.2d 227, 231 (1988). Specifically, evidence tending to show a third party's involvement in a crime should be admitted "as long as motive and opportunity have been shown and . . . there is also some evidence to directly connect [the] third person to the crime charged." *State v. Denny*, 120 Wis. 2d 614, 624, 357 N.W.2d 12, 17 (Ct. App. 1984).

In the present case, the court was well within its discretion in barring defendant from presenting evidence about Mr. Camber. Defendant's offer of proof indicated that Mr. Camber disliked Mr. Smith and had made statements he later denied

that showed he was familiar with the crime at least three days after it was committed. There was no evidence to incriminate Mr. Camber directly. The proffered evidence was likely only to confuse or mislead the jury, and the court thus properly rejected the offer. V.R.E. 403.

### III.

Last, defendant claims he was deprived of his right to a unanimous jury verdict under Chapter I, Article 10 of the Vermont Constitution. Defendant argues that because three individuals participated in the crime, part of the jury might have convicted him for the acts of one or both of the other perpetrators. This claim of error was not preserved for appeal, and we look only for plain error. Regardless, the argument is without merit.

Defendant correctly cites the general rule that where there is evidence of more than one act that would constitute the offense charged, the State must specify the act for which it seeks a conviction. *State v. Bailey*, 144 Vt. 86, 98, 475 A.2d 1045, 1052 (1984). The required election protects the defendant from the possibility that part of the jury will base its decision to convict on evidence of conduct different from that considered by the rest of the jury. Such a decision would deprive the defendant of his right to a unanimous verdict based on a single offense. *Id.* In the present case, defendant's argument fails for two reasons.

First, the Gilman brothers' burglary and assault on Mr. Smith constituted a single, uninterrupted criminal transaction, and thus falls within the exception to the general rule. See *id.* at 99, 475 A.2d at 1053 (no plain error in failure to elect where many acts leading to two charges of sexual assault occurred within one and one-half hours); cf. *State v. Bonilla*, 144 Vt. 411, 416, 477 A.2d 983, 986 (1984) (conviction reversed where defendant was charged with one count of arson and one count of insurance fraud in connection with three fires over a three-day period).

Second, the jury was entitled to convict defendant as jointly culpable for the acts of his brothers. It is settled that

[w]here several persons combine under a common understanding and with a common purpose to do an illegal act, every one is criminally responsible for the acts of each and all who participate with him in the execution of the unlawful design.

*State v. Orlandi,* 106 Vt. 165, 171, 170 A. 908, 910 (1934), *quoted in State v. Barr,* 126 Vt. 112, 122, 223 A.2d 462, 469 (1966) (four masked men entered home intending to take owner's money; defendant's conviction sustained). The jury was instructed on the law of joint criminal liability, and the evidence was ample to support their verdict.

*Affirmed.*