## State of Vermont v. Daniel Martin Griswold

[782 A.2d 1144]

No. 00-154

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed August 24, 2001

444

*William H. Sorrell,* Attorney General, and *David Tartter,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates,* Barre, for Defendant-Appellant.

**Morse, J.** Following a jury trial, defendant Daniel Griswold was convicted of aggravated sexual assault in violation of 13 V.S.A. § 3253(a)(7). On appeal, defendant claims: (1) the trial court erred by excluding evidence of the victim's past domestic disputes and limiting expert testimony, thereby depriving defendant of his constitutional right to a fair trial, and (2) the evidence presented by the State was insufficient to find him guilty of aggravated sexual assault. We affirm.

In the dark early morning hours of July 26, 1998, the victim was sexually assaulted on a riverbank off a trail in Rutland. At trial, she testified that she had been out the night before and early that morning with friends at different bars in Rutland. Her friends then left her in an intoxicated state at "Jilly's." The victim did not remember leaving the bar, but when she regained consciousness, she was restrained, face down on the ground with someone penetrating her rectum. While she screamed for him to stop, the perpetrator pushed her face into the dirt and shoved rocks, grass and gravel into her mouth, which made breathing difficult. She was not able to look at him. After he left, she ran home, tearing off her ripped underwear on the way. The victim was taken to the hospital and treated for a number of injuries including facial swelling and abrasions, a bruise from blunt force impact over her eye, contusions, bruises and abrasions on her back, a bruise on her right hip and abrasions to her abdomen.

When the police investigated the scene of the crime, they located the victim's underwear and found a set of keys. The keys were linked to defendant, whose duplicate key was already in police custody for an unrelated matter. The police went to defendant's home, and he identified the key as his own. He said that he had talked with the victim and kissed her outside Jilly's the morning of the assault, but denied any further interaction with her.

Defendant later submitted to blood sampling for purposes of DNA testing. He then retracted his earlier denial of sexual relations and stated that he had consensual vaginal intercourse with the victim. An examination of the victim identified the presence of sperm in her anus. No sperm was found in her vagina. DNA testing was performed on samples taken from five different men under investigation, including the victim's boyfriend. Defendant was the only one who could not be eliminated as the source of sperm.

Defendant was charged with one count of aggravated sexual assault under 13 V.S.A. § 3253(a)(7). At the close of the State's case, the defense moved for judgment of acquittal, which was denied. At the end of the six-day trial, the jury found defendant guilty. He filed two post-trial motions for judgment of acquittal and for a new trial, which were denied. The court sentenced him to forty years to life imprisonment. This appeal followed.

## I.

As part of his defense, defendant sought to introduce evidence that the victim and her boyfriend had a history of violence, and to argue

that her injuries were therefore attributable to a third party, her boyfriend, rather than defendant. The trial court excluded the evidence.

■ While it is true, as defendant points out, that when "motive and opportunity have been shown and . . . there is also some evidence to directly connect [a] third person to the crime charged," evidence implicating a third party should be admitted. *State v. Grega*, 168 Vt. 363, 375, 721 A.2d 445, 454 (1998) (internal quotation marks and citations omitted). The requirement that a defendant establish motive, opportunity and a direct connection prior to admission of third-party evidence is a threshold relevancy requirement. See *id.* Defendant points to admissions by the victim's boyfriend that, after leaving a bar in the area the same night of the assault, he had walked the path by the riverbank where the assault occurred. While this may establish opportunity, it does not necessarily establish a direct connection between the boyfriend and the assault. See *State v. Fenney*, 448 N.W.2d 54, 62 (Minn. 1989) (holding that third party's mere presence in same trailer park where murder occurred on same evening did not provide the necessary foundation to establish the third party's connection to the crime). There was no other evidence linking him to the crime.

■ Even assuming, however, that there was a sufficient connection to establish the relevance of defendant's third-party evidence, that evidence must be otherwise admissible. See *State v. Gilman*, 158 Vt. 210, 214, 608 A.2d 660, 663 (1992) (noting a defendant is entitled to call witnesses and present evidence on his behalf, but it must be otherwise admissible). Vermont Rule of Evidence 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Therefore, the prior domestic incidents were inadmissible to show that the boyfriend "acted in conformity therewith," i.e., that he inflicted the physical injuries on the victim on the night of the sexual assault.* Furthermore, as the trial court noted, the fact that the victim

---

* Defendant argues in his reply brief that the history of domestic violence should have been admitted under *State v. Sanders*, 168 Vt. 60, 716 A.2d 11 (1998), to establish the context of his third-party theory that the boyfriend caused the victim's injuries. This was not the proffer made at the trial level, however. Rather, as defendant argued to the trial court, he sought to introduce evidence that there are "people out there who in fact are prone to getting into . . . physical altercation[s] with [the victim]. And that may well have happened during that bit period of time when we just don't know what happened." (Referring to the time period between the victim being at Jilly's and her coming to consciousness during the sexual assault.)

also happened to be a victim of domestic violence was not a character trait forming an essential element of either of defendant's two asserted defenses — consent and mistaken identity — and thus the incidents of domestic abuse were not admissible under V.R.E. 405(b). Therefore, we discern no abuse of discretion on the part of the trial court in excluding evidence of incidents of the victim and her boyfriend's domestic violence.

The defense also sought to introduce expert testimony that the victim's physical condition was not caused by a physical assault but was an allergic reaction — a dermatitis — to purple nightshade found in the vicinity of the assault. The V.R.E. 104 hearing revealed that the expert, who possesses a master's degree in forest ecology, had no specialized knowledge, training, or work experience regarding the effects of absorption of purple nightshade through the skin. By the time of trial, he had consulted some professional texts and studies that he had obtained from the library. He testified, however, that most of the studies involved irritation from ingestion and not contact. The expert had never seen contact dermatitis from purple nightshade. The court permitted the expert to testify as a botanist regarding the presence of purple nightshade in the area where the sexual assault was alleged to have occurred, and that the plant is toxic or poisonous if ingested. The court precluded him from testifying, however, as to the physical symptomology of purple nightshade, including testimony that contact with purple nightshade causes chills, nausea, vomiting or inflamed mucous membranes of the lips and mouth. Defendant noted his objection to the limitation of the expert's testimony.

■ Defendant argues that the trial court, in limiting the testimony, was making a determination as to the witness's credibility, which is a jury question. We disagree. In considering the witness's qualifications, the trial court was not judging his veracity, but rather was considering his competency as an expert witness. The competency of an expert witness is a threshold question to be determined by the trial court and is within its sound discretion. *State v. Bubar*, 146 Vt. 398, 402, 505 A.2d 1197, 1200 (1985). This determination is made under V.R.E. 702, which provides that if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify thereto in the form of an opinion or otherwise."

■ Here, the trial court correctly noted that absent from the expert's knowledge, experience, and training was knowledge as to the effect of contact dermatitis from purple nightshade and that the studies that he was relying upon related to ingestion and not contact. Thus, we discern no abuse of discretion. See *State v. Perry*, 151 Vt. 637, 643, 563 A.2d 1007, 1012 (1989) (rulings which lie within the discretion of the trial court will not be set aside on appeal, absent a showing of abuse of discretion).

■ Defendant also challenges the exclusion of photographs of the victim's physical condition after a prior physical assault in February which he sought to contrast with her condition after the July sexual assault in this case. The trial court excluded these photographs because their "probative value [was] outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." V.R.E. 403. As the State has correctly observed, the photographs had little probative value. Defendant sought to introduce this evidence to demonstrate that the victim's physical condition was not the result of the sexual assault, but an allergic reaction to vegetation that was located at the scene of the assault. In the absence of detailed medical testimony regarding the specific nature of the February assault injuries, which the defense did not offer, a comparison between the two incidents had little probative value. Furthermore, given that the photographs were inadmissible as evidence of the victim's past domestic disputes under V.R.E. 404, the presentation of photographs of the victim's condition after the February assault was likely only to confuse the jury regarding the issues before it. See *State v. Gilman*, 158 Vt. at 214-15, 608 A.2d at 663 (evidence properly excluded under Rule 403 where it would confuse or mislead the jury). Thus, the court did not abuse its discretion by excluding the photographs.

## II.

■ Defendant next asserts that the evidence was insufficient to support his conviction and that his V.R.Cr.P. 29 motion for judgment of acquittal was wrongly denied. In reviewing denial of a motion for acquittal, we view the evidence in the light most favorable to the judgment and, excluding any modifying evidence, determine whether that evidence sufficiently and fairly supports a finding of guilt beyond a reasonable doubt. *Grega*, 168 Vt. at 380, 721 A.2d at 457.

Defendant was convicted of violating 13 V.S.A. § 3253(a)(7), which provides that a person commits aggravated sexual assault if the actor applies deadly force to the victim in the course of a sexual assault. Title

13, § 3251(7) defines deadly force as "physical force which a person uses with the intent of causing, or which the person knows or should have known would create a substantial risk of causing, death or serious bodily injury." Defendant argued in his motion for judgment of acquittal that there was no evidence in the record supporting a finding that deadly force was used on the victim. The trial court upheld defendant's conviction under the aggravated sexual assault statute, reasoning that choking creates a substantial risk of causing death or serious bodily injury. *State v. Sorrell*, 152 Vt. 543, 547, 568 A.2d 376, 378 (1989).

Defendant argues on appeal that he did not choke the victim because there was no evidence that he ever put anything around the victim's neck. In *Spearman v. State*, the assailant was convicted of aggravated sexual assault because he pummeled the victim while sexually assaulting her, which resulted in asphyxiation. 694 S.W.2d 216, 217-18 (Tex. Ct. App. 1985). On appeal, the Texas court held that it was reasonable for a jury to find that conduct that results in asphyxiation creates a substantial risk of causing serious bodily injury or death. *Id.* at 218. Similarly, the evidence here shows that the victim could not breathe because defendant was shoving rocks, dirt, and gravel into her mouth. Therefore, the trial court did not err in finding that the evidence sufficiently and fairly supported the jury's determination that defendant's conduct constituted deadly force.

Defendant also argues that he did not have the intent required for conviction under 13 V.S.A. § 3253(a)(7) because he did not intend to cause death or serious bodily injury to the victim when he shoved dirt, rocks and gravel into the victim's mouth, nor should he have known that he was creating a risk of such. It was reasonable, however, for a jury to find that the defendant should have known that his actions would create a substantial risk of death or serious bodily injury, which is all that is required under the definition of deadly force. 13 V.S.A. § 3251(7). He should have known that the same matter that was blocking the victim's mouth and preventing her from screaming could very likely prevent her from breathing. Viewing the evidence in the light most favorable to the judgment, we conclude that it was sufficient to support a finding of guilt beyond a reasonable doubt. The trial court did not err in denying defendant's motion for judgment of acquittal.

*Affirmed.*